**13 CV 2718**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
CATHERINE SCORSESE                          :
                                            :   Case No. _____
            Plaintiff,                      :
                                            :
    -against-                               :   COMPLAINT
                                            :
MICHAEL SIMON; KENNETH WADDELL;             :   **JURY TRIAL DEMANDED**
JUMPVIEW ENTERTAINMENT, LLC; and            :
CAMPUS LIFE PRODUCTIONS, LLC                :
                                            :
            Defendants.                     :
------------------------------------------------------X

*RECEIVED APR 24 2013 U.S.D.C. S.D.N.Y. CASHIERS*

Plaintiff Catherine Scorsese ("Scorsese" or "Plaintiff"), by and through her attorneys, Lavely & Singer Professional Corporation, for her Complaint against Defendants Michael Simon ("Simon"), Kenneth Waddell ("Waddell"), Jumpview Entertainment, LLC ("Jumpview"), and Campus Life Productions, LLC ("Campus Life") (collectively, "Defendants"), alleges as follows:

## NATURE OF THE CASE

1. If you want to do business with people who commit fraud, then Defendants are the perfect business partners for you. Similarly, if you want to render valuable services for free despite being promised that you would receive fair compensation, then you should render those services for Defendants. And if you have ever dreamed of working with people who will do anything to benefit themselves at your expense, than Defendants are your dream come true. On the other hand, as Scorsese learned from her first-hand experience, if you expect to be treated honestly and fairly, and to receive the compensation and benefits that you have been promised without resorting to litigation, then you should not associate yourself with Defendants.

2. Specifically, this case arises out of the shameful actions of Defendants, who falsely induced Scorsese to render her valuable co-producing and co-directing services for them in connection with the motion picture *Campus Life* (the "Picture") by promising her certain rights and compensation that they had no actual intention of providing.

3. Because a written agreement was never finalized, Scorsese performed her services on the Picture under an oral agreement with Defendants (the "Agreement"), believing that Defendants would follow through on their promises and representations. In fact, not only did Scorsese provide her own valuable services to Defendants, but she even arranged for her father, legendary director Martin Scorsese, as well as acclaimed actor Ray Liotta, to provide their valuable services in connection with the Picture. Neither Mr. Scorsese nor Mr. Liotta would have associated themselves with the Picture had it not been for the fact that Scorsese was the co-director and co-producer.

4. Although Scorsese performed her contractual obligations under the Agreement, Defendants failed to do the same. In particular, Defendants failed and refused to provide Scorsese with any compensation whatsoever for her directing and producing services, failed and refused to credit Scorsese as the co-director and co-producer of the Picture, and failed and refused to even allow Scorsese to review the Picture before they released it to the general public. Accordingly, there has been a complete failure of material consideration under the Agreement.

5. Through this action, Scorsese now seeks to rescind the Agreement and disgorge Defendants of the benefits that they have wrongfully obtained on account of their fraudulent misrepresentations. Scorsese also seeks to obtain the rightful compensation and credit that she has been denied due to Defendants' wrongful conduct.

## THE PARTIES

6. Plaintiff Catherine Scorsese is, and at all relevant times herein was, an individual residing in the State of New York and regularly transacting business in New York, New York.

7. Defendant Simon is, and at all relevant times herein was, an individual residing in the Commonwealth of Pennsylvania.

8. Defendant Waddell is, and at all relevant times herein was, an individual residing in the State of New Jersey.

9. Defendant Jumpview is, and at all relevant times herein was, a domestic limited liability company organized under the laws of the Commonwealth of Pennsylvania.

10. Defendant Campus Life is, and at all relevant times herein was, a domestic limited liability company organized under the laws of the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. §1332(a).

12. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the Plaintiff's claims arose in this district.

## FACTUAL ALLEGATIONS

13. In late 2011, Defendant Waddell, both individually and as the authorized agent of Defendants Jumpview and Campus Life, approached Scorsese with the prospect of working

with him and Defendant Simon on a cutting edge entertainment venture called *Jumpview* (the "Venture"). As Waddell described it to Scorsese, the Venture was intended to be an online program that would give people a new and unique way to experience television shows and films – namely, by allowing people to watch shows and films from the differing perspectives of each individual character in the story. Viewers would have the ability able to "jump" back and forth during the plot and pick the order in which they would watch each scene, from beginning to middle to end or from end to middle to beginning, or any other order they choose.

14. In connection with the Venture, in or around January 2012, while Scorsese was in New York, Waddell and Simon requested her services as the co-director and co-producer for the Picture, which was intended to be the Venture's first major endeavor and the launching pad for the entire Venture. Specifically, as an inducement for Scorsese to render her valuable co-director and co-producer services, and in consideration for those services, Waddell made a number of oral promises to Scorsese.

15. First, in lieu of receiving upfront monetary compensation for her services, Waddell represented to Scorsese that she would receive a significant share of all profits generated by Jumpview and Campus Life – the two limited liability companies which were set up in connection with the Venture and the Picture. In particular, Waddell promised Scorsese that she would receive a twenty-five percent (25%) share of the profits from Jumpview and a thirty three and a third percent (33.33%) share of the profits from Campus Life.

16. Second, to ensure that the finished Picture would accurately reflect Scorsese's creative vision, Waddell represented to Scorsese that she would have the opportunity to review and approve the Picture prior to its exploitation or release.

17. Finally, Waddell represented to Scorsese that she would be formally credited as

4

both the co-director and co-producer of the Picture.

18. Relying on the oral promises and representations by Waddell, Scorsese agreed to serve as the co-director and co-producer for the Picture, and to render her valuable services as such. Scorsese's reliance was reasonable in light of the fact that she was already Waddell's equal partner in a separate limited liability company – Scorsese Waddell Entertainment, LLC – and therefore understood that the Venture was a logical extension of this business relationship.

19. Although the parties contemplated entering into a written agreement, no such written agreement was ever finalized or executed. Accordingly, only the oral Agreement was entered into between and among the parties.

20. From April to August, 2012, Scorsese diligently performed her co-directing and co-producing services on the Picture. These services included, but were not limited to, casting the actors for the Picture, hiring the crew for the Picture, working with the actors to prepare for scenes, setting up camera angles during the filming of the Picture, and directing the actors and crew on set during the filming of the Picture. These services were performed in both New York and New Jersey.

21. Not only did Scorsese perform her own services under the Agreement, but she also arranged for her father, legendary director Martin Scorsese, as well as acclaimed actor Ray Liotta, to provide their valuable services on the Picture. Due to the participation of these notable individuals, the Picture received significant press coverage, which helped to increase the Picture's marketability. However, neither Mr. Scorsese nor Mr. Liotta would have associated themselves with the Picture had it not been for the fact that Scorsese herself was associated with the Picture as its co-director and co-producer.

22. Although Scorsese diligently performed under the Agreement, Defendants

5

failed to do the same. In particular, Defendants have now claimed that Scorsese is not entitled to any percentage, much less the agreed upon 25% and 33.33% of Jumpview and Campus Life, respectively.

23. Moreover, despite repeated requests from Scorsese, Defendants refused to provide her with the opportunity to view the Picture prior to its exploitation and release. In particular, on February 13, 2013, Defendants exploited the Picture on the Jumpview.com website without first showing it to Scorsese, as they were contractually obligated to do.

24. Defendants also failed to credit Scorsese as the co-director and co-producer of the version of the Picture that was released on the Jumpview website.

## COUNT I
## FRAUD

25. Scorsese repeats and realleges the allegations set forth in Paragraphs 1 through 24, inclusive, as if fully set forth herein.

26. As alleged hereinabove, in or around January 2012, while Scorsese was in New York, Waddell (both in his individual capacity and as the authorized agent of Defendants Jumpview and Campus Life) represented to Scorsese that, if she would serve as the co-director and co-producer for the Picture, she (1) would receive a 25% share of the profits from Jumpview and a 33.33% share of the profits from Campus Life, (2) would have the opportunity to both review and approve the Picture prior to its release, and (3) would be credited as the co-director and co-producer of the Picture.

27. Waddell knew the foregoing representations were false. Specifically, at the time he made the foregoing representations to Scorsese, Waddell either had no intention of following through on his representations, and/or otherwise made the representations recklessly

6

and without regard for the truth in an effort to induce Scorsese to render her valuable services on the Picture.

28.   Waddell made the foregoing representations with the intention that Scorsese rely thereon and in order to induce Scorsese to act in reliance on those representations, and Scorsese did in fact reasonably and justifiably rely on those representations to her detriment by entering into the Agreement, rendering her co-producing and co-directing services for Defendants' benefit and use, and foregoing any upfront compensation in lieu of receiving a 25% share of the profits from Jumpview and a 33.33% share of the profits from Campus Life.

29.   As a direct and proximate result of Waddell's fraudulent misrepresentations, Scorsese has been damaged in an amount not currently known, but believed to be in excess of the jurisdictional requirements of this Court. When Scorsese has ascertained the full amount of her damages, she will seek leave of Court to amend this Complaint.

30.   Scorsese is informed and believes and based thereon alleges that Waddell, in doing the things herein alleged, acted willfully, maliciously, oppressively and despicably with the full knowledge of the adverse effect of his actions on Scorsese, and with willful and deliberate disregard of the consequences to Scorsese. By reason thereof, Scorsese is entitled to recover punitive and exemplary damages from Waddell, Jumpview, and Campus Life in an amount to be determined at the time of trial.

## COUNT II
### RESCISSION

31.   Scorsese repeats and realleges the allegations set forth in Paragraphs 1 through 24, and 26 through 30, inclusive, as if fully set forth herein.

32.   As alleged hereinabove, Defendants fraudulently induced Scorsese to enter into

7

the Agreement by falsely representing that she (i) would receive a 25% share of the profits from Jumpview and a 33.33% share of the profits from Campus Life; (ii) would have the opportunity to both review and approve the Picture prior to its release; and (iii) would be credited as the co-director and co-producer of the Picture. But for these false representations by Defendants, Scorsese would not have entered into the Agreement and would not have performed her co-directing and co-producing services for Defendants' benefit.

33. Also as alleged hereinabove, there has been a complete failure of consideration under the Agreement due to Defendants' failure and refusal to (i) provide Scorsese with a 25% share of the profits from Jumpview and a 33.33% share of the profits from Campus Life; (ii) provide Scorsese with the opportunity to both review and approve the Picture prior to its release; and (iii) credit Scorsese as the co-director and co-producer of the Picture.

34. Scorsese hereby gives notice and intends transmission of the Complaint to serve as notice of the rescission of the Agreement, and of any rights and benefits that Scorsese conferred on Defendants under the Agreement.

35. Scorsese hereby offers to restore to Defendants any reasonable consideration furnished by Defendants under the Agreement on the condition that (i) Defendants have no right to exploit or release the Picture, (ii) Scorsese receives all monies that are received by Defendants (or any of their assignees) from any and all third parties in connection with their exploitation of the results and proceeds of Scorsese's co-directing and co-producing services for the Picture, and (iii) any and all rights in and to the results and proceeds of Scorsese's co-directing and co-producing services for the Picture revert back to Scorsese.

## COUNT III
## INJUNCTIVE RELIEF

36. Scorsese repeats and realleges the allegations set forth in Paragraphs 1 through 24, 26 through 30, and 32 through 35, inclusive, as if fully set forth herein.

37. Through the transmission of this Complaint, Scorsese has rescinded the Agreement, and any rights and benefits that Scorsese conferred on Defendants under the Agreement.

38. As a result of Scorsese's rescission of the Agreement, any and all rights in and to the results and proceeds of Scorsese's co-directing and co-producing services for the Picture have reverted back to Scorsese, and Defendants have no further right to exploit these results and proceeds.

39. Scorsese therefore seeks an injunction prohibiting Defendants from exploiting the Picture.

## COUNT IV
## BREACH OF CONTRACT

40. Scorsese repeats and realleges the allegations set forth in Paragraphs 1 through 24, 26 through 30, 32 through 35, and 37 through 39, inclusive, as if fully set forth herein.

41. In the event the Court does not rescind the Agreement, Scorsese alleges that Defendants materially breached the Agreement by (i) failing and refusing to provide Scorsese with a 25% share of the profits from Jumpview Entertainment and a 33.33% share of the profits from Campus Life; (ii) failing and refusing to allow Scorsese to review the Picture before Defendants released it to the general public; and (iii) failing and refusing to credit Scorsese as the co-director and co-producer of the Picture.

9

42. Scorsese has performed all duties and obligations on her part required to be performed by the Agreement, except to the extent such performance was waived, excused, or prevented by reason of the acts and omissions of Defendants.

43. As a direct and proximate result of the material breaches of the Agreement by Defendants, Scorsese has been damaged in an amount not currently known, but believed to be in excess of the jurisdictional requirements of this Court. When Scorsese has ascertained the full amount of her damages, she will seek leave of Court to amend this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Scorsese respectfully demands judgment in her favor as follows:

1. On the First Count, for compensatory, punitive, and exemplary damages from Defendants in an amount to be determined at the time of trial, plus reasonable attorneys' fees and costs, and for such further relief as this Court deems just and proper.

2. On the Second Count, for rescission of the Agreement, resulting in (i) Defendants having no further right to exploit or release the Picture; (ii) Scorsese receiving all monies that are received by Defendants (or any of their assignees) from any and all third parties in connection with their exploitation of the results and proceeds of Scorsese's co-directing and co-producing services for the Picture; and (iii) any and all rights in and to the results and proceeds of Scorsese's co-directing and co-producing services for the Picture reverting back to Scorsese.

3. On the Third Count, for an injunction prohibiting Defendants from exploiting the Picture on account of Scorsese's rescission of the Agreement.

4. On the Fourth Count, for compensatory damages from Defendants in an amount

to be determined at the time of trial, plus reasonable attorneys' fees and costs, and for such further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a jury trial in this action on all issues and claims triable to a jury.

Dated: Los Angeles, California
       April 23, 2013

LAVELY & SINGER
PROFESSIONAL CORPORATION

By: _____
Andrew B. Brettler (AB2662)
Martin D. Singer
   (*pro hac vice* application to be filed)
David B. Jonelis
   (*pro hac vice* application to be filed)
2049 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone: (310) 556-3501
Facsimile: (310) 556-3615
Email: abrettler@lavelysinger.com

*Attorneys for Plaintiff Catherine Scorsese*